UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CURTIS MOSS,

        Plaintiff,

 v.               No. 05-CV-1585
                  (NAM/DRH)

TED NESMITH, Registered Physician Assistant,
Great Meadow Correctional Facility; DAVID
CARPENTER, Deputy Superintendent of Programs,
Great Meadow Correctional Facility; and LUCIEN J.
LeCLAIRE, Deputy Commissioner of DOCS

        Defendants.

---

**APPEARANCES:**       **OF COUNSEL:**

CURTIS MOSS
Plaintiff Pro Se
01-B-2310
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929

HON. ANDREW M. CUOMO     JEFFREY P. MANS, ESQ.
New York State Attorney General    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

 Plaintiff pro se Curtis Moss ("Moss"), presently an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

---

  [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

U.S.C. § 1983 alleging that defendants, three DOCS employees, violated his right to medical care under the Eighth Amendment while Moss was incarcerated at the Great Meadow Correctional Facility ("Great Meadow"). Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 33. Moss has failed to respond to the motion. For the following reasons, it is recommended that defendants' motion be granted.

### I. Failure to Respond

Moss did not oppose defendants' motion. "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). In an order dated August 13, 2007, Moss was warned that his failure to respond to defendants' motion by September 14, 2007 would result in this Court treating the facts asserted by defendants as true and that the motion might be granted absent a response from Morgan. Docket No. 38; see also Defs. Notice of Motion (Docket No. 33, Pt. 1) at 2 ("If you do not [respond], summary judgment, if appropriate, may be entered against you. If summary judgment is granted against you, your case will be dismissed and there will be no trial."). Despite these notices, Moss failed to respond.

"The fact that there has been no response to a summary judgment motion does not. . . mean that the motion is to be granted automatically." Champion, 76 F.3d at 436. Even in the absence of a response, defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. Id.; Fed. R.

2

Civ. P. 56(c).  Because Moss has not responded to raise any question of material fact, the facts as set forth in defendants' Rule 7.1 Statement of Facts (Docket No. 33, Pt. 7) are accepted as true.  Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., No. 00-CV-1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) (citing Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)).

## II. Background[2]

The facts are related herein in the light most favorable to Moss as the nonmoving party. See subsection II(A) infra.

On September 3, 2005, while incarcerated at Great Meadow, Moss injured his knee and ribs when he fell playing basketball.  Defs. Statement of Material Facts at ¶ 2.  Moss contends that immediately after he fell, defendant Nesmith, a physician's assistant, "looked at [his] knee and had [him] transferred to the . . . Infirmary without any medical treatment."  Id. at ¶ 3.  However, medical records indicate that Nesmith noted that Moss "seemed theatrical and appeared to present an exaggerated response . . . ; appeared to be in no acute distress; [had] . . . no edema (swelling), no abrasion, and no ecchymosis (discoloration)."  Id. at ¶ 17.  Moss was diagnosed with a minor contusion and was recommended for "admit[tance] to the prison hospital for further observation, rest and ice, and scheduled for x-rays the following Wednesday."  Id. at ¶ 18.

Three days later, Moss was examined by a physician "who noted that [Moss] was up

---

[2] Any reference to medical information is derived from the information attached as an exhibit in the public docket and not from the sealed medical records also on file with the Court.  See Docket No. 35.

3

and about with no problems . . ." and subsequently discharged him.  Id. at ¶ 19.  However, Moss claims he was released from the infirmary while "still suffering pain [with his] . . . kneecap . . . extremely swollen . . . ."  Id. at ¶ 3.

On September 8, 2005, Nesmith saw Moss on sick call, noting "he was in no acute distress," and upon discovering Moss had not yet been x-rayed, immediately sending him to the hospital for x-rays of his left knee and ribs.  Id. at ¶ 20.  While awaiting the x-ray report, Moss was examined by medical staff on September 11 and 15 complaining of pain to his knee and ribs.  Id. at ¶ 22.  He was provided with pain medication, muscle relaxing ointment, a sick slip for three days rest, and scheduled for a medical call-out on September 30.[3]  Id.  When the x-ray report was received a few days later, it indicated that Moss' knee suffered from "no bone, joint, or soft tissue abnormality . . ." and that his ribs had "no evidence of fracture or discoloration."  Id. at ¶ 21.

Moss was next seen by medical staff complaining of knee and abdominal pain on October 14, 2005.  Id. at ¶ 24.  He was given pain medication and rescheduled for a medical call-out on October 26, 2005.  Id.  On October 26, the physician that examined Moss "noted . . . questionable effusion (swelling not apparent) of the left knee, the knee joint was stable, and that the x-rays were negative."  Id. at ¶ 25.  The physician provided Moss with pain medication and recommended increased exercise for his left knee, a follow-up appointment, and potential MRI if no improvement was seen.  Id.  Moss contends that this physician informed him that he had "torn ligaments in [his] leg and knee," but this alleged diagnosis was not noted anywhere in the medical record.  Id. at ¶ 5, 26.

---

[3]Moss missed his September 30 call-out, so medical staff noted that Moss could follow-up with them as needed.  Defs. Statement of Material Facts at ¶ 23

4

On December 8, 2005, Moss was examined by medical staff again due to complaints that his pain medication was not adequately relieving his pain. Id. at ¶ 29. The staff scheduled a medical appointment for Moss to discuss this with a physician. Id. On January 5, 2006, Moss had a follow-up appointment with the physician. Id. at ¶ 31. Despite Moss' continued complaints of difficulty with his knee, "no effusion or swelling [was] noted." Id. However, the physician did "not[e] some atrophy of the quads . . . [and] an increased range of motion [that was] still not normal . . . [so the physician] recommended a referral for an outside orthopedic consult . . . ." Id.

Moss was examined by an orthopedist for a consultation on February 10, 2006. Id. at ¶ 32. The orthopedist "noted that [Moss] had a good range of movement of the knee, [had] no tenderness under the medial facet of the patella, and [had] no pain and grinding of the patella itself, no joint line tenderness, and no instability of the knee." Id. The orthopedist told Moss that the only way he could provide a more definitive diagnosis was if Moss consented to arthroscopic surgery,[4] which Moss declined. Id. at ¶ 33. Moss' physician followed-up with Moss after the consultation, informing Moss that only if he changed his mind could he be reevaluated. Id. at ¶ 34.

Moss received medical attention for alleged pain in his knee three times in March. Id. at 36. On March 23, 2006, Moss was seen by the physician who again discussed the possibility of surgery with Moss. Id. at ¶ 37. Moss was uncomfortable with consenting to the surgery. Id. Approximately one month later, Moss decided to undergo the surgery and,

---

[4] Due to clips placed in Moss' chest to treat a prior gunshot wound, it was impossible for Moss to undergo an MRI. Id. at ¶ 34.

on May 12, 2006, was sent to the orthopedist for additional x-rays and a surgical consult. Id. at 39. Due to a break-down in the physician-patient relationship, the orthopedist refused to perform the surgery. Id.

When the results from the x-rays came back, they "noted that there was increased density of the left patella likely related to chrondromalacia . . . [with] no other significant abnormalit[ies] seen." Id. at ¶ 41. On June 21, 2006, when Moss was seen by his physician for a follow-up to the consult, Moss "refused to go to another trip for further evaluation and refused further medical treatment." Id. at 43.

Moss received medical treatment for an unrelated injury on August 16, 2006. Id. at ¶ 44. However, the injuries required x-rays of Moss' left knee. Id. The x-rays showed "spotty patella demineralization (same a Chrondromalacia . . .; a chronic slow deterioration of the bone tissue which is not a serious medical condition and for which there is no treatment)." Id. at ¶ 45.

Moss was transferred to Upstate Correctional Facility in September 2006. Id. at ¶ 48. When he arrived, Moss complained to medical staff that "he had broken his ribs within the past year, and requested x-rays and to see a doctor. . . ." Id. On January 16, 2007, x-rays were again taken of Moss' knee and indicated "mild degenerative changes . . . ." Id. at ¶ 50. However, "it was recommended that a bone scan be performed to rule out any aggressive bone process." Id. The whole body scan indicated "mild degenerative uptake in [the] left knee . . . [and was] otherwise unremarkable." Id. at ¶ 51.

### III.  Discussion[5]

Moss asserts one cause of action, claiming deliberate indifference to a serious medical need in violation of the Eighth Amendment.  Defendants contend that (1) there was no serious medical need or deliberate indifference and (2) they are shielded by qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

---

[5] Defendants also contend that Moss has failed to exhaust his administrative remedies.  Additionally, defendants claim that there was no supervisory liability.  Because it is recommended herein that defendants' motion be granted on other grounds, these arguments need not be addressed.

7

find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment[6]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v.

---

[6] Liberally construing the complaint, Moss contends that defendants Carpenter and LeClaire were involved with the continual deprivation of medical attention by aiding the medical staff through the Inmate Grievance Program (IGP) denials, effectively "covering up" the medical indifference Moss was experiencing. However, because no constitutional violation occurred during treatment, there can be no subsequent cover-up conspiracy through the IGP. Therefore, any such claim must fail.

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. at 703.  Thus, "disagreements over medications,

9

diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Moss may have offered enough evidence to demonstrate that the knee and rib injuries he sustained were serious. Generally, knee injuries have been "insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." Johnson v. Wright, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (holding that a prisoner's torn meniscus suffered as a result of a basketball injury was not a serious medical need) (quoting Moody v. Pickles, No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need); see also Williamson v. Goord, No. 02-CV-521(GLS/GHL), 2006 WL 1977438, at *9,14,16 (N.D.N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law"). However, "a broken rib could present a serious medical need" if treatment was not properly administered. Torres v. New York City Dep't of Corrs., No. 93-CV-6296 (MBM), 1995 WL 63159, at *1 (S.D.N.Y. Feb. 15, 1995). Thus, taken together and construing the facts in the light most favorable to Moss, the broken ribs and injured knee may be sufficiently serious to constitute a serious medical need.

However, even if it can be argued that Moss suffered from a serious medical need, his claim fails to demonstrate deliberate indifference. Immediately after sustaining his injuries, Moss presented with nothing more than a contusion. Defs. Statement of Material Facts at ¶ 18. Despite this superficial injury, Moss was still admitted to the hospital for three days, scheduled for x-rays, and treated. Id. Moss was discharged from the hospital after meeting with another physician and appearing in no acute distress. Id. at ¶ 3. Thus, it does not medically indicated that Moss remain in the hospital because he would be receiving unnecessary treatment. Therefore, it cannot be said that defendants delayed or denied Moss treatment after he sustained his injury.

Additionally, defendants did not deprive Moss of any treatment. Moss was seen by a medical professional eighteen times between the date of his injury on September 3, 2005 and the date he refused further treatment on June 21, 2006. He was given three sets of x-rays, two orthopedic consults, and the option for arthroscopic surgery while under defendants' care and custody. Moreover, these x-rays indicated that there were no fractures to his ribs and that there was nothing extraordinary about Moss' knee other than degenerative changes which were not (1) caused by an acute injury sustained while playing basketball, (2) considered medically serious, and (3) treatable. Thus, defendants concluded, and the diagnostic tests confirmed, that Moss was not suffering from any medically serious ailments. Moss clearly disagreed with this assessment; however, the additional set of x-rays and body scan performed upon Moss' arrival at Upstate validated defendants' diagnoses. Therefore, Moss' conclusory assertions that he received improper medical attention, absent other documentation, fails to constitute evidence sufficient to raise issues of fact as to the medical records. See Williams v. Coughlin, 650 F. Supp. 955, 957

11

(S.D.N.Y. 1997) (granting summary judgment where "plaintiff's affidavit and deposition . . . [did] not contain facts involving manifestations of . . .deliberate indifference. . . .").

Therefore, defendants' motions for summary judgment on this ground should be granted.

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Moss'

allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, it is recommended in the alternative that defendants' motions on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 33) be **GRANTED** and the judgment be entered for all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  January 23, 2008
       Albany, New York

*David R. Homer*
United States Magistrate Judge